Doerfer, J.
Plaintiff has filed a Motion for Preliminary Injunction. Defendant has filed a Motion to Dismiss, or in the alternative, for Summary Judgment. Jurisdiction is claimed under Mass. Gen. Laws c. 231 A.
BACKGROUND
Plaintiffs are inmates lawfully incarcerated at the Massachusetts Correctional Institute in Norfolk.[1] On April 2, 1993 the Department of Correction published notice of a public hearing to be held May 10, 1993 regarding the promulgation of proposed regulations governing inmate property, 103 CMR 403. Plaintiffs claim that the regulations violate certain of their rights under the Massachusetts and United States Constitutions. Specifically, plaintiffs claim that 103 CMR 403.11(C)(4), which limits the number of books, magazines and newspaper that an inmate may possess in his cell to ten, violates their rights to practice their religious beliefs as guaranteed by both the Massachusetts and United States Constitutions. In addition, plaintiffs claim that this regulation violates their right to free speech as guaranteed by the Massachusetts and United States Constitutions. Finally, plaintiffs claim that 103 CMR 403.11(C)(2), which limits the amount of paper that an inmate may possess to one hundred sheets or one tablet, violates their rights to free speech as guaranteed by the Massachusetts and United States Constitutions.
DISCUSSION
Summary judgment is proper where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c). The moving party has the burden of demonstrating the absence of a triable issue, and that the moving party is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass 14, 16-17 (1989). Once the moving party establishes the absence of a triable issue, the opposing party must respond and allege specific facts establishing the existence of a material fact in order to defeat the motion. Id. at 17.
In evaluating plaintiff s claims that their Constitutional rights have been violated, it is first necessary to determine whether the Massachusetts Constitution *293 provides greater protection than the United States Constitution. Lovell v. Superintendent, North Central Correctional Institution, 26 Mass.App.Ct. 35, 36 (1988), considered issues similar to the case at bar and concluded that it was proper to apply a federal standard of review. Therefore the claims of the plaintiffs will be evaluated under the U.S. Constitution as it appears that the Massachusetts Constitution provides no greater protection to the plaintiffs.
It is well settled that “(p)rison walls do not form a barrier separating prison inmates from the protection of the Constitution.” Turner v. Safely, 482 U.S. 78, 84 (1987). But it is also true that “ [sjimply because prison inmates retain certain constitutional rights does not mean that these rights are not subject to restriction and limitation.” Bell v. Wolfish, 441 U.S. 520, 545 (1978). See also Champagne v. Commission of Correction, 395 Mass. 382, 387 (1985). As a result a balance must be drawn.
The proper standard of review enunciated by the U.S. Supreme Court is that “(w]hen a prison regulation impinges on inmates’ constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.” Turner at 89. In adopting this standard, the Court explicitly rejected a strict scrutiny analysis for fear that it would “seriously hamper” the ability of prison officials to adopt innovative solutions to security problems. Id. The Court was also concerned that the application of a “least restrictive alternative” test would lead to unnecessary involvement in prison administration by the courts. Id., citing Procunier v. Martinez, 416 U.S. 396, 407 (1974).
In applying the Turner standard, there are several factors relevant to determining the reasonableness of a particular regulation. While there is no empirical formula used for weighing the factors, their consideration is useful in determining the reasonableness of a particular regulation. Each factor will be discussed in turn.
First, there must be a “valid, rational connection” between the regulation and the legitimate government interest. Turner at 89. The relationship between the regulation and the goal should not be so remote that the policy is arbitrary or irrational. Id. at 89-90. Here the regulation limits the number of books allowed in a cell to ten and the number of sheets of paper to one hundred or one tablet. The stated government interest is to establish regulations governing personal property of inmates. The underlying goal appears to be to reduce possible fire hazards or security problems. Clearly limiting the number of books or papers allowed in a cell is not so remotely connected to such a goal as to render the regulation unconstitutional.
The second concern under Turner is whether there are alternative means of exercising the right claimed to be infringed upon that remain open to prison inmates. Id. at 90. Here the plaintiffs are allowed to use the library at the prison and may donate articles to the inmate library. In effect, the plaintiffs will be allowed to store excess materials in the prison library. Therefore, alternative means are available to plaintiffs.
Plaintiff relies on O’Lone v. Estate of Shabazz, 482 U.S. 342 (1989), with respect to the claim that the regulation violates their freedom to practice their religious beliefs. It should first be noted that the passage cited on page 10 of plaintiffs memoranda is taken from the dissenting opinion of Justice Brennan, but is not cited as such. Moreover, the facts of O’Lone are distinguishable from those in the case at bar. O’Lone involved a regulation which denied Islamic inmates the opportunity to attend Jumu’ah, a Muslim service held on Friday afternoons. O’Lone at 345. The majority opinion of Chief Justice Rehnquist held that the appropriate inquiry was whether the claimants retained the ability to participate in other Muslim ceremonies. Id. at 352. In the case at bar there is no evidence that plaintiffs are being denied the opportunity to practice a specific aspect of their faith. They are free to use the library should they need to utilize more than ten books at a time for religious purposes. All that plaintiffs are being denied is the right to keep an unlimited number of books in their cell. Therefore the regulation in this case is actually less restrictive than that in O’Lone, which was held to pass constitutional muster.
In addition, plaintiffs cite Mass. Gen. Laws c. 127, §88 on page 15 of their memorandum for the proposition that “(a]n inmate of any prison or other place of confinement shall not be denied the free exercise of his religious beliefs and the liberty of worshiping God according to the dictates of his conscience in the place where he is confined . . .” While that statute does contain the quoted passage, it also contains the provision that “(t]his section shall not be so construed as to impair the discipline of any such institution so far as may be needful for the good government and safe custody of its inmates . . .” Thus the plaintiffs claim on this issue must also fail as the freedom of religion is subordinate to the discipline of the facility.
The third factor under Turner focuses on the impact that accommodation of the asserted right will have on guards and other inmates. Turner at 90. If this “ripple effect” is significant, the discretion of correction officials should be afforded deference. Id. Here allowing inmates to maintain large numbers of books and papers in their cells could hinder access to those cells by officials. In addition, the threat of fire that exists must be considered. The Department of Corrections apparently considered this to be a concern and their expertise weighs heavily in the determination of this factor.
Finally, under Turner, the court should consider the existence or absence of “obvious, easy alternatives” as evidence of the regulation’s reasonableness. Id. at 90-91. While this should not be viewed as a “least restrictive alternative” test discussed earlier, the ability of an inmate claimant to suggest viable alternatives *294 should be considered in determining whether the reasonable relationship has been satisfied. Id. The plaintiffs have not proposed any such alternative here, they have instead focused on the lack of any of the actual harm to date. Such a contention is not sufficient to outweigh the previously discussed factors.
Based on an evaluation of the factors listed above, it is clear that no triable issue exists with regard to plaintiffs claims. The proposed regulations pass constitutional muster under the test enunciated in Turner. Therefore, summary judgment shall issue against the plaintiffs.
ORDER
It is hereby ORDERED that Plaintiffs Motion for Preliminary Injunction be DENIED, and that Defendant’s Motion for Summary judgment be GRANTED.

 It appears from plaintiffs memorandum of April 5 1994 that plaintiff James Pike has left MCI-Norfolk.